**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**MONTICELLO INSURANCE COMPANY,**

        **Plaintiff,**

-vs-                                          **Case No. 6:03-cv-1514-Orl-19KRS**

**NATIONAL CASUALTY COMPANY,**

        **Defendant.**

_____

## ORDER

This case comes before the Court on National Casualty's Motion for Reconsideration and/or Clarification of June 16, 2005, Order Denying National Casualty's Motion to Amend its Affirmative Defenses to Add Reformation and Incorporated Memorandum of Law (Doc. No. 91, filed June 30, 2005) and Monticello's Opposition to National Casualty's Motion (Doc. No. 93, filed July 18, 2005).

**Standard for Reconsideration**

The decision to grant reconsideration is committed to the sound discretion of the district court and will not be overturned on appeal absent an abuse of discretion. *Region 8 Forest Serv. Timber Purchases Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993). The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002). There are three grounds for reconsideration: "(1) an intervening change in controlling law; (2) the availability of new evidence; and (3) the need to correct clear error or

prevent manifest injustice." *Id.* A motion for reconsideration should not be used to reiterate arguments previously made. *Id.*

## Discussion

In its Order granting summary judgment in Monticello's favor, the Court denied National Casualty's request for leave to amend its affirmative defenses in response to Monticello's alternate theory of recovery, *i.e.* application of the "nonowned auto" provision of Martins Transport's Commercial Auto policy to the Corvette at issue in the underlying *Cleek* litigation. (Doc. No. 78, filed June 16, 2005, p. 22). The Court reasoned in part that to permit National Casualty to pursue the affirmative defense of rescission of the policy "would result in Martins Transport's being exposed and uninsured for any claims under the policy which accrued during the policy period but have not yet been asserted," and noted that National Casualty "should have requested leave to amend its affirmative defenses at an earlier time instead of waiting until discovery had closed and the case was near trial."[1] (*Id.*). Because it was too late in the litigation to join Martins Transport as a party and therefore allowing the rescission defense would be unduly prejudicial to that unrepresented company, and because National Casualty "failed to assert the affirmative defenses in a timely manner," the Court denied National Casualty's request. (*Id.*).

National Casualty now argues that the Court erred in focusing its attention on rescission and overlooking the availability of the affirmative defense of reformation based on the mutual intent of the parties. (Doc. No. 91). National Casualty contends that reformation would not pose

---

[1] The Amended Case Management and Scheduling Order in this case provided an April 15, 2004, deadline for amending the pleadings and a discovery deadline of February 15, 2005. (Doc. No. 20, filed Dec. 16, 2004).

the same threat of prejudice to Martins Transport because the policy could be reformed as to the nonowned auto provision only, rather than rescinding the entire contract. (*Id.* at 17–18). National Casualty further argues that the policy would be reformed for the limited purposes of the Cleek loss at issue in the instant litigation, that the doctrine of *res judicata* would not preclude Martins Transport in the future from asserting claims under the policy's nonowned auto provision, and therefore the joinder of Martins Transport as a necessary party would not be required. (*Id.* at 18–19).

As an initial matter, the Court notes that it did not overlook the reformation defense in its Order, nor did it mistakenly combine the two distinct defenses into one theory. Although both rescission and reformation were mentioned at the June 10, 2005, hearing, the Court understood counsel for National Casualty to represent that rescission of the policy would be the preferred defense based on Maria Martins' alleged intentional misrepresentations in procuring nonowned auto coverage,[2] and the Court limited its focus accordingly. Nevertheless, even if the court had explicitly addressed the reformation defense, as it does now, its ruling would have been the same. The Court based its decision not only on the potential prejudice to Martins Transport but on the lateness of National Casualty's request to amend its answer, and such reasoning applies to the theory of reformation as well as to rescission.

As noted in its previous Order, and giving National Casualty every benefit of the doubt, National Casualty was on notice of Monticello's alternate "nonowned auto" theory of the case no later than the end of January 2005, after the issue had been explored extensively in the

---

[2] Counsel for National Casualty argued at the hearing that Maria Martins should be assumed to know that the nature of her business was moving cars, and therefore her statements that Martins Transport used no nonowned autos on the application for nonowned auto coverage (Doc. No. 72, filed June 14, 2005, Ex. 1, p. 5) were intentional misrepresentations.

depositions of Frances Brown (Doc. No. 33, filed Mar. 15, 2005, Ex. C, Brown Depo., taken Jan. 19, 2005) and Debra Sansoucy (*Id.*, Ex. B, Sansoucy Depo., taken Jan. 25, 2005).  Moreover, National Casualty argues that Monticello did not produce a copy of Martins Transports' application for nonowned auto coverage until January 19, 2005, which form was in the possession of Crump Insurance, the underwriting agent for the policy, and was the first available evidence in support of reformation.[3]  (Doc. No. 91, pp. 13, 17 n.2).  However, National Casualty did not request leave of the Court to amend its affirmative defenses until March 15, 2005, at the earliest, when it filed its memorandum in support of summary judgment, a month after the close of discovery and almost a year after the deadline for amending the pleadings.  (Doc. No. 32; Doc. No. 20).

Compounding this seven week delay (between the later of the depositions and the filing of National Casualty's summary judgment motion), National Casualty buried its request to amend the pleadings deep in its summary judgment memorandum and consequently failed to comply with the Local Rules of this Court.  In the case of nondispositive motions including motions for leave to amend, Local Rule 3.01(g) requires a moving party to "confer with counsel for the opposing party in a good faith effort to resolve the issues raised in the motion" and to certify that such conference has taken place.  (*See also* Doc. No. 20, Case Management Scheduling Order, § II(A)).  No such certification was made with regard to National Casualty's

---

[3] Given that Crump was National Casualty's agent with regard to the Martins Transport policy and there is evidence of correspondence between Sue Steenhagen of Crump and National Casualty's underwriter, Debra Sansoucy, concerning the nonowned auto coverage, National Casualty should have been aware of the existence of this evidence to support a reformation defense based on its own records and those of its agent without relying on Monticello's discovery efforts. (Doc. No. 33, Ex. B, Sansoucy Depo., pp. 139, 180–81; Ex. C, Brown Depo., p. 81).

request because such request was made in conjunction with a dispositive motion to which the rule does not apply. Lest it appear that the Court is putting form over substance, by combining the nondispositive "motion" with the dispositive summary judgment motion, which by Order of the Court was not to be taken under advisement until April 27, 2005 (Doc. No. 42, filed Mar. 28, 2005),[4] National Casualty failed to adequately bring its request to the attention of the Court in such a way that it could have been considered and ruled upon in a more timely fashion.

Leave to amend a pleading may be denied on grounds "such as undue delay, bad faith or dilatory motive on the part of the movant,...undue prejudice to the opposing party..., etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Furthermore, when leave to amend is sought after the expiration of the deadline imposed by the scheduling order, it should be granted only upon a showing of good cause, which "precludes modification unless the schedule cannot be met despite the diligence of the party seeking the extension." *Saewitz v. Lexington Ins. Co.*, 133 Fed. Appx. 695, 700 (11th Cir. 2005) (internal quotation marks omitted) (citing *Fed. R. Civ. P.* 16(b)). While assuming that National Casualty could not have adhered to the April 15, 2004, deadline for amendment of the pleadings contained in the Amended Case Management and Scheduling Order (Doc. No. 20), the amount of time permitted to pass after National Casualty, at the latest, came to know of Monticello's alternate theory and of evidence to support a reformation defense before it made its request for leave to amend, as well as the improper method by which such

---

[4] Under the original *Milburn* Order, the Court was to have taken the parties' summary judgment motions under advisement on April 11, 2005. (Doc. No. 35, filed Mar. 16, 2005). However, an amended *Milburn* Order changed the advisement date to April 27. (Doc. No. 42).

request was made, constitute undue delay.[5]  Accordingly, the Court maintains that leave to amend would be inappropriate in the instant case.

## Conclusion

Based on the foregoing, National Casualty's Motion for Reconsideration (Doc. No. 91) is **DENIED**, and the Court's decision to deny National Casualty's request for leave to amend the pleadings stands.  National Casualty's Motion for Clarification with regard to the affirmative defense of reformation (*Id.*) is **GRANTED** as indicated, *supra*.

**DONE** and **ORDERED** in Chambers in Orlando, Florida this  4th   day of August, 2005.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[5]  Because the Court finds that National Casualty's request for leave to amend was unduly delayed, it does not examine the sufficiency of the evidence proffered by National Casualty in support of reformation of Martins Transport's policy.  However, the Court notes its concern that National Casualty's characterization of Maria Martins' deposition testimony fails to recognize Ms. Martins' confusion throughout her deposition with regard to which of her company's insurance policies was issued to cover various types of risk.  For example, Martins referred to the National Casualty's Commercial Auto policy as the "general liability policy," while it is undisputed that Monticello was the general liability carrier for Martins Transport. (Doc. No. 33, Ex. D, Martins Depo., p. 53; Doc. No. 40, Ex. A, Hahn Decl., Ex. 3, Monticello Policy).  She also stated that she added garage keeper's liability because it was required by the Florida Auto Action. (Doc. No. 33, Ex. D, Martins Depo., pp. 51, 60, 89).  It is undisputed by the parties that the "nonowned auto" coverage provision was added to the National Casualty policy at the behest of the Auction.  She testified that "garage keeper's liability" was intended to cover the risk posed while drivers performed work on cars before they could be moved. (*Id.* at 89).  Later in the deposition, Martins stated that the Monticello policy provided garage keeper's coverage, "which is what the [] Auction required," and again testified that the "other policy" (presumably the National Casualty policy) provided general liability coverage. (*Id.* at 93).  Martins was not specifically questioned about the application for nonowned auto coverage required by the Auction and whether such coverage was distinct from that which she called garage keeper's coverage.  Finally, as the Court previously noted, Martins was unaware of which of the two insurance companies defended her company in the *Cleek* litigation and paid the settlement in that suit. (*Id.* at 79–80, 86).

Copies furnished to:

Counsel of Record